IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jack Yetiv and Lithium Investment Partners, LP, | § § § § | |
| *Plaintiffs,* | § § | Civil Action No. _____ |
| vs. | § § | |
| Joseph Grosso, Nikolaos Cacos and Grosso Group Management, Ltd. | § § § § | |
| *Defendants.* | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff Jack Yetiv ("Yetiv") and Lithium Investment Partners ("Lithium Partners") file this Original Complaint against Defendants Nickolaos Cacos ("Cacos"), Joseph Grosso ("Grosso") and Grosso Group Management, Ltd ("Grosso Group"), and would show as follows:

## II. PARTIES AND SERVICE

1. Plaintiff Yetiv is a United States citizen and Texas resident with his principal place of business in Harris County, Texas.

2. Plaintiff Lithium Partners is a Texas limited partnership company with its principal place of business in Harris County, Texas.

3. Defendant Joseph Grosso is a resident of Canada. He may be served at 837 West Hastings Street, Suite 411, Vancouver, BC V6C 3N6.

4. Defendant Nickolaos Cacos is a resident of Canada. He may be served at either 900 West Hastings Street, Suite 300, Vancouver, BC, Canada V6C1E5 or 837 West Hastings Street, Suite 411, Vancouver, BC, Canada V6C1E5.

1

5.      Defendant Grosso Group Management, Ltd. ("Grosso Group") is an entity organized under the laws of the Canada.  It may be served by serving its principal, Joseph Grosso, at Suite 411, 837 West Hastings Street, Vancouver, BC V6C 3N6.

### III.      JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and/or countries and the amount in controversy exceeds $75,000.00 exclusive of interest or costs.

7.      Venue is proper in this District because it is where a substantial part of the events giving rise to Plaintiff's claims occurred. 28 U.S.C. § 1391(b)(2). Further, Plaintiffs reside in the District and are subject to the Court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1391(c)(2). All of the representations and agreements at issue were, either wholly or in part, made, received, discussed, negotiated, formed, or performed in Houston, Texas. Additionally, Defendants are foreign residents and a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

### IV.      STATEMENT OF FACTS

8.      Argentina Lithium is a Canadian company listed on the over-the-counter stock exchange in the United States ("OTC") formerly under ticker symbol PNXLF but more recently changed to LILIF. Argentina Lithium's purported business model involves mining for lithium in Argentina. Defendant Joseph Grosso is the Chairman of the Board and Director of Argentina Lithium. Defendant Nickolaos Cacos is the President and Chief Executive Officer of Argentina Lithium. Together, Grosso and Cacos conspired with Grosso's company, Grasso Group Management, Ltd., to fraudulently induce Plaintiffs to invest in Argentina Lithium and then defraud them through their actions in operating Argentina Lithium.

2

9.    In 2022, Defendants actively solicited Plaintiff Yetiv in Texas to buy 15,000,000 shares of PNXLF for $3,300,000 million Canadian dollars. At all times during their solicitation campaign, Defendants knew Yetiv was located in Texas and directed their communications to him in Texas, beginning with an invitation to a Zoom call on July 14, 2022, to which Yetiv responded, "that would be 10:00 a.m. my time here in Houston. I'll see you tomorrow." Indeed, all of Yetiv's emails ended with a signature block identifying his location as Houston, Texas.

10.    In soliciting Yetiv, Defendants represented that they had been mining in Argentina longer than just about any other company, that Joseph Grosso had guided company operations in Argentina since 1993, that they knew Argentina permitting and mining regulations extremely well, and that they had been extremely successful in their Argentina operations, citing two subsidiaries that had done very well financially.

11.    In lieu of Canadian dollars, defendants accepted Yetiv's wires of USD $1,401,957 on July 29, 2022 and USD $1,126,575 November 11, 2022.  Yetiv wired these amounts after dozens of emails exchanged, as well as presentations and Zoom calls, initiated by Defendants to Yetiv in his office in Houston, Texas. Yetiv's funds were wired from his Schwab account located in Houston as well.

12.    Buoyed by Yetiv's investment, Defendants continued to solicit investors in Texas in order to benefit from the booming Texas economy.

13.    On September 23, 2022, defendant Cacos and two other executives of Argentina Lithium had a Zoom call with Mike Scott ("Scott") in Texas.  Scott was the President of Plaintiff Lithium Partners, in Houston, Texas, and the Zoom call concerned Lithium Partners making a potential investment in Argentina Lithium. In that meeting, Argentina Lithium indicated that they needed to raise approximately USD $5,000,000, that one of their existing major investors

3

was "a guy from Texas" (referring to Plaintiff Yetiv) who owned over 10% of the company and that they deal with a lot of US clients. In their sales pitch, Defendants explicitly relied on the fact that their company had other Texas investors as an inducement to Scott and Lithium Partners.

14.    On September 27, 2022, Argentina Lithium emailed Scott (in Texas) a 19-page promotional piece entitled "Energy Through Independence" demonstrating its desire to induce Texans and other United States investors when stating:

> "We advise U.S. investors that SEC's mining guidelines strictly prohibit mineral formation of this type in documents filed with the SEC.  U.S. investors are cautioned that mineral deposits on adjacent properties are not indicative of mineral deposits on our properties."

15.    On October 3, 2022, Argentina Lithium emailed Scott (in Texas) regarding an investment "of up to $5,000,000 USD" by Lithium Partners, that Argentina Lithium "could possibly accommodate that amount as long as you stay under %10 [sic] of outstanding shares," and added, "[w]e have done hundreds of private placements with American funds and individual investors."

16.    On October 4, 2022, Argentina Lithium emailed Scott an NDA in Texas.

17.    On October 13, 2022. Argentina Lithium emailed Scott (in Texas) an article from the North American Edition of Investing News Network dated December 12, 2022 and entitled "Argentina Lithium Poised for Resource Allocation, CEO Says."

18.    On October 14, 2022, Argentina Lithium emailed Scott (in Texas) to invite him to be a part of a Zoom meeting on October 25, 2022 regarding recent drill results, which Scott attended.

19.    On October 15, 2022, Argentina Lithium emailed Scott (in Texas) assay results and logs from the lithium mines that Argentina Lithium was soliciting Plaintiff Lithium Partners to invest in.

20. On October 20, 2022, Argentina Lithium emailed Scott (in Texas) a link to a YouTube presentation of an interview with Defendant Cacos on "MarketOne Minute" where Defendant Cacos stated that Rincon West was its flagship project because it is adjacent to the Rio Tinto project that has a very large reserve for which Rio Tinto had paid $825,000,000 (a true statement).

21. At all times throughout their solicitation of Scott, Defendants knew Scott was located in Texas and intentionally directed their solicitations to Scott in Texas.

22. Argentina Lithium maintained USD Bank Account XXXX331 for purposes of receiving solicited investment funds from US investors, and on November 3, 2022, Argentina Lithium emailed Scott wiring instructions for Lithium Partners to wire funds into Argentina Lithium's USD bank account.

23. On November 15, 2022, the culmination of Defendants' active solicitation of Plaintiff Lithium Partners in Texas resulted in Plaintiff Lithium Partners buying 23,000,000 shares of PNXLF for $5,800,000 Canadian dollars.

24. Moreover, in lieu of Canadian dollars, Defendants accepted Lithium Partners' wiring of USD $4,327,250, which was wired from Stellar Bank in Houston, Texas on November 15, 2022.

25. Plaintiffs paid Defendants entirely in US dollars for their shares of PNXLF.

26. In both cases, Plaintiffs agreed to participate in the aforementioned capital raise based on Defendant' representations during emails, calls and Zoom meetings (to them in Texas) and in written documents and email communications that they were honest, experienced mining operators with nearly 30 years of success in diversified mining operations in Argentina, where the relevant lithium mines were located. Information sent to Plaintiff Lithium Partners in Texas

stated that Defendant Grosso was "one of the early pioneers of the mining sector in Argentina in 1993" and "was named Argentina's Mining Man of the year in 2005". All of Defendants' representations induced Plaintiffs' investments by convincing them that Defendants were operating PNXLF for the benefit of shareholders, and were experts in mining matters in Argentina (where PNXLF's mining assets were located)—and where Defendants represented that they had operated several other successful mining enterprises since 1993.

27. On September 27, 2023, PNXLF issued a press release, attached hereto as Exhibit A, representing that Stellantis N.V. ("Stellantis") would effectively invest US $90,000,000 in PNXLF—an amount approximately triple the market value of PNXLF on that date. In fact, as later admitted by Defendant Cacos, this statement was not true—with Stellantis actually investing only USD $40,350,000, not USD $90,000,000. Defendants transmitted the September 27, 2023 press release to Plaintiffs, who received it in Texas.

28. On November 20, 2023, Defendants issued another press release, in which Defendant Cacos stated (emphasis added): "In fact, the Stellantis funding is expected to *carry us through exploration drilling to potential resource definition and initial engineering study stages at Rincon West and Antofalla North*, allowing us to build value with *minimal dilution for our investors*."

29. Further, in the press release, Defendants falsely stated that management "has a long history of success in the resource sector of Argentina" and "has assembled a first-rate team of experts to acquire and advance the best lithium properties in the 'Lithium Triangle.'" Defendants transmitted the November 20, 2023 press release to Plaintiffs in Texas.

30. Based on the foregoing misrepresentations, Yetiv bought approximately 8,000,000 additional shares of PNXLF on the OTC market in the United States at a total cost of

approximately USD $3,000,000, bringing his total investment in PNXLF to about USD $5,500,000.

31.    On October 9, 2023, Defendants disclosed that, after receiving the Stellantis investment, they spent $51,791,411 million to prepay AGV, a drilling contractor, for 15,500 meters of drilling services, amounting to a cost of over $3,340 per meter drilled. However, at the time, the market cost of drilling 15,500 meters was approximately 10% of the rate *prepaid* by Defendants.

32.    Only a year later, on December 23, 2024, AGV "bought back" the obligation to drill the 11,325 remaining meters (for which Defendants prepaid $36.5 million) for approximately $3 million—$265 per meter drilled—a loss of over $3,000 per meter and over $33 million in aggregate. .Defendants' overpriced prepayment followed by their decision to abandon the prepaid contract at a $33 million loss suggests a sham contract, gross negligence in management, and/or self-dealing.

33.    Furthermore, in 2024 and 2025—when the lithium expert consensus concluded that lithium prices were not going to become profitable for junior miners in the near future—Defendants spent nearly $10 million to acquire MORE land to explore, even though there was absolutely no business case for doing so given that PNXLF already had tens of thousands of acres that it could never even begin to explore in the following few years and given that spending this money to acquire more (useless) land basically eliminated the remaining company cash reserves.

34.    The foregoing conduct led to recurring operating losses and negative cash flow from operating activities of ($96,520,368) in 2023 and ($8,974,555) in 2024, which predictably led to a conclusion by the company auditors in both years that Argentina Lithium faces "material

7

uncertainties that may cast significant doubt about the company's ability to continue as a 'going concern,'" and a likely upcoming bankruptcy or very significant dilution occasioned by an equity raise.

35.   Defendants have continued to solicit money from both Plaintiffs even as recently as January 23, 2026, fully aware that both Plaintiffs are Houston, Texas, residents.

## V.   CAUSES OF ACTION

### COUNT I: FRAUDULENT INDUCEMENT

36.   Plaintiffs incorporate all prior paragraphs by reference as if fully stated herein.

37.   Defendants fraudulently induced Plaintiffs to invest in Argentina Lithium by, among other things: (1) mispresenting the honesty, qualifications and credentials of Defendants and other executives of Argentina Lithium; (2) mispresenting the amount of money Stellantis had invested in Argentina Lithium; (3) misrepresenting the prior success of Argentina Lithium in Argentina; and (4) misrepresenting the goals which Defendants intended to achieve utilizing the Stellantis funds. Defendants knew, or reasonably should have known, that their representations to Defendants concerning the above topics were false at the time the representations were made.

38.   Defendants intended to induce Plaintiffs to invest, Plaintiffs justifiably relied on Defendants' statements in investing in Argentina Lithium and, as a result of such investment have been damaged. More specifically, but for Defendants' fraudulent inducement, Plaintiffs would not have invested in Argentina Lithium and would have obtained a return of their investment capital and greater returns through alternative investments.

### COUNT II: CONSPIRACY TO FRAUDULENTLY INDUCE

39.   Plaintiffs incorporate all prior paragraphs by reference as if fully stated herein.

40.    To the extent any Defendant did not personally make any fraudulent statements to Plaintiffs to induce them to invest, all Defendants also reached a meeting of the minds to induce Plaintiffs to invest (a lawful object) by making misrepresentations to Plaintiffs concerning the items listed above in Count I (unlawful means). The transmission of each misrepresentation identified in Count I to Plaintiffs represented an overt act in furtherance of the conspiracy. Plaintiffs justifiably relied on such misrepresentations in investing and were damaged as a result.

### COUNT III: FRAUD

41.    Plaintiffs incorporate all prior paragraphs by reference as if fully stated herein.

42.    Defendants committed fraud against Plaintiffs after Plaintiffs invested by, among other things: (1) mispresenting the honesty, qualifications and credentials of Defendants and other executives of Argentina Lithium; (2) mispresenting the amount of money Stellantis had invested in Argentina Lithium (3) misrepresenting the prior success of Argentina Lithium in Argentina; (4) misrepresenting the goals which Defendants intended to achieve utilizing the Stellantis funds; and (5) causing Argentina Lithium to enter into a sham contract transferring the majority of the company's cash assets to AGV, then eliminating all of AGV's obligations to the Company a year later for a 10% return of funds. Defendants knew, or reasonably should have known, that their representations to Defendants concerning the above topics were false at the time the representations were made.

43.    Defendants intended to induce Plaintiffs to refrain from withdrawing their investment in Argentina Lithium, Plaintiffs justifiably relied on Defendants' statements in continuing to invest in Argentina Lithium and, as a result of such investment have been damaged. More specifically, but for Defendants' fraud, Plaintiffs would have withdrawn their investment

in Argentina Lithium and would have obtained a return of their investment capital and greater returns through alternative investments.

## COUNT IV: CONSPIRACY TO COMMIT FRAUD

44. Plaintiffs incorporate all prior paragraphs by reference as if fully stated herein.

45. To the extent any Defendant did not personally make any fraudulent statements to Plaintiffs, all Defendants also reached a meeting of the minds to induce Plaintiffs to maintain their investment in Argentina Lithium (a lawful object) by making misrepresentations to Plaintiffs concerning the items listed above in Count III (unlawful means). The transmission of each misrepresentation identified in Count III to Plaintiffs represented an overt act in furtherance of the conspiracy, as did the transactions involving transfers to and from AGV. Plaintiffs justifiably relied on such misrepresentations in investing and were damaged as a result.

## VI. CONDITIONS PRECEDENT

46. All conditions precedent to Plaintiffs' recovery of damages for the claims and causes of action asserted herein have occurred or have been waived.

## VII. JURY DEMAND

47. Plaintiffs demand a jury trial on all issues so triable.

## VIII. PRAYER FOR RELIEF

48. For these reasons, Plaintiffs ask for actual damages, direct damages, indirect damages, incidental damages, consequential damages, special damages, interest, attorney's fees, costs, and all other relief to which they are entitled in law or equity.

DATED:  February 6, 2026

Respectfully submitted,

*/s/ Bradley Coburn*

**The Texas Trial Group, PC**
Ryan Downton (*admission pending*)
Texas State Bar No. 24036500
875 Carr 693, Ste. 103
Dorado, PR 00646*
Phone: 512-680-7947
Ryan@TheTexasTrialGroup.com
*Ryan Downton is licensed in Texas, not
Puerto Rico

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF LITHIUM PARTNERS**

Bradley Coburn
Texas State Bar No. 24036377
**SHELTON COBURN LLP**
311 RR 620 S, Suite 200
Austin, TX 78734
coburn@sheltoncoburn.com
Telephone: (512) 453-6402
Facsimile: (512) 263-2166

*/s/ Jack Yetiv*
Jack Yetiv
SBN 24029918
10120 Westview Dr., Apt. 2110
Houston, TX 77043
(713) 703-5058
jyetiv@aol.com

***Pro Se***

11